THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SAYIDATU OLUBUNMI HASSAN-MCDONALD, | ) ) ) |
| *Plaintiff*, | ) ) ) No. 21 C 3931 |
| v. | ) ) Judge Virginia M. Kendall |
| ALEJANDRO MAYORKAS, *Secretary*, DEPARTMENT OF HOMELAND SECURITY, *et al.*, | ) ) ) ) |
| *Defendant*s. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Sayidatu Olubunmi Hassan-McDonald is challenging the denial of an I-130 Petition for Widow she filed in October of 2016. (Dkt. 1). Plaintiff alleges that Defendants' denial of her Petition was arbitrary and capricious, in violation of the Administrative Procedure Act ("APA"). (*Id.* ¶ 32). Defendants now move to dismiss Plaintiff's Complaint for failure to state a claim. (Dkt. 7). For the reasons set forth below, the Defendants' motion [7] is granted.

**BACKGROUND**

On a motion to dismiss under Rule 12(b)(6), the Court accepts the complaint's well-pleaded factual allegations, with all reasonable inferences drawn in the non-moving party's favor, but not its legal conclusions. *See Smoke Shop, LLC v. United States*, 761 F.3d 779, 785 (7th Cir. 2014). Unless otherwise noted, the following factual allegations are taken from Plaintiff's Complaint, (Dkt. 1), and are assumed true for purposes of this motion. *W. Bend Mut. Ins. Co. v. Schumacher*, 844 F.3d 670, 675 (7th Cir. 2016). In addition, documents that "a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987

1

F.2d 429, 431 (7th Cir. 1993); *see also, e.g.*, *Andersen v. Village of Glenview*, 821 F. App'x 625, 627 (7th Cir. 2020); *Swift v. DeliverCareRx, Inc.*, No. 14-cv-3974, 2015 WL 3897046, at *1 (N.D. Ill. June 23, 2015); *Pine Top Receivables of Ill., LLC v. Banco De Seguros del Estado*, No. 12-cv-6357, 2013 WL 677986, at *2 (N.D. Ill. Feb. 25, 2013). Here, Plaintiff's Defendants have attached the relevant administrative decisions that form the basis of Plaintiff's Complaint. (Dkts. 8-1, 8-2, 8-3). The Court thus may reference these documents in considering the Motion to Dismiss.

**I. Plaintiff's Immigration Petition**

Plaintiff Sayidatu Olubunmi Hassan-McDonald is a Nigerian citizen who resides in Cook County, Illinois. (Dkt. 1 ¶ 11). She married Bernard McDonald ("McDonald"), a United States citizen, on September 1, 2015. (*Id.* ¶ 22). On December 15, 2015, McDonald filed an I-130 Petition for Alien Relative on Plaintiff's behalf to classify her as the spouse of a United States citizen. (*Id.* ¶ 23). Plaintiff and McDonald participated in an interview regarding the petition on March 3, 2016. (*Id.*). On June 24, 2016, McDonald passed away, and Plaintiff thereafter filed a Form I-360 Petition for Widow on October 3, 2016. (*Id.* ¶¶ 24–25).

On July 24, 2017, U.S. Citizenship & Immigration Services ("USCIS") issued a Notice of Intent to Deny ("NOID") Plaintiff's I-360 Petition for Widow. (*Id.* ¶ 26; *see also* Dkt. 8-1). The NOID set forth the evidence USCIS relied upon in denying the petition. (Dkt. 8-1). Among other things, USCIS cited discrepancies in the couple's visa interview which showed that they were "unable to answer several questions in concurrence or at all." (*Id.* at 2–3). Namely:

1. Plaintiff failed to identify the correct year McDonald's father passed away;
2. Plaintiff was "unsure where [McDonald] was born;"
3. McDonald did not know whether Plaintiff's parents were alive;
4. McDonald could not definitively state whether Plaintiff had grandchildren;
5. Plaintiff did not know that McDonald had previously been arrested;
6. McDonald incorrectly stated that Plaintiff's brother lived in Chicago, whereas he actually lives in Nigeria;
7. Plaintiff believed that McDonald graduated from high school, which he did not;

2

8. McDonald did not know whether Plaintiff was employed while living in Nigeria; and
9. McDonald was unaware that Plaintiff was previously in a polygamous marriage.

(*Id.* at 3; *see also* Dkt. 1 ¶ 26 (conceding that "[t]he [NOID] lists inconsistencies provided at the time of Plaintiff and [McDonald's] I-130 interview")).

Per the NOID, Plaintiff also submitted a residential lease to establish her bona fide marriage to McDonald. (Dkt. 8-1 at 2). However, the lease was in McDonald's name alone. (*Id.*). Although Plaintiff's signature appeared on the final page of the lease, her name was otherwise absent from the document. (*Id.*). Moreover, USCIS noted that only one key was issued for the apartment that the couple purportedly shared. (*Id.*). Given these facts, USCIS determined that it "[did] not appear as though the lease [was] issued in joint names." (*Id.*).

The NOID further noted that the police report taken following McDonald's death indicated that Plaintiff was neither residing with McDonald at the time of his death, nor was she notified as his next of kin. (*Id.* at 3). Finally, McDonald's death certificate listed his spouse's name as "Queen" rather than Plaintiff's legal name. (*Id.*).

Assessing the totality of this evidence, USCIS determined that Plaintiff "failed to establish [she] ever had a bona fide marital relationship" with McDonald – or that her marriage "was not entered into solely for the purpose of [Plaintiff] obtaining immigration benefits." (*Id.*).

## II. USCIS's Denial of Plaintiff's Petition

Plaintiff timely responded to the NOID with additional information in support of her petition. (Dkt. 1 ¶ 27). Among other things, she submitted evidence showing her family, friends, and late husband knew her as "Queen." (*Id.*). A letter from Plaintiff's brother- and sister-in-law explained that Plaintiff resided in Milwaukee with McDonald and that the couple visited Chicago often. (*Id.*). The affidavits also shed light on the circumstances surrounding McDonald's death

3

and her whereabouts on that date. (*Id.* ¶¶ 27, 35). Plaintiff also attempted to clarify some of her responses during the visa interview. (Dkt. 8-2 at 4).

Despite Plaintiff's efforts, USCIS denied her Form I-360 Petition on or about September 13, 2017. (*Id.* ¶ 28; *see also* Dkt. 8-2). USCIS reiterated the petition's deficiencies as set forth in the NOID, and further determined Plaintiff's supplemental evidence did not cure her petition's deficiencies. (Dkt. 8-2 at 4–5). To the contrary, some of this evidence *further undermined* her petition. During Plaintiff's visa interview, she claims that she "had **never** worked or held a job since entering the United States." (*Id.* at 4 (emphasis added)). However, Plaintiff filed an affidavit that indicated that she was in fact employed in the United States during her marriage to McDonald. (*Id.*). Upon USCIS's further investigation, Illinois Department of Public Health confirmed that Plaintiff worked for two separate health care facilities between December 2014 and April 2017. (*Id.* at 4–5). Plaintiff never provided the government any information concerning these jobs as she was required to do. (*Id.* at 5). Thus, USCIS concluded: "You were working in and residing [in] Illinois . . . throughout your entire marriage, and **you concealed this information on all applications and petitions, and in all information given during your interview.**" (*Id.* at 5 (emphasis added)). Files retrieved from the Department of Public Health also showed that Plaintiff listed her *uncle's* address – rather than her and McDonald's purportedly shared home address – on background check documents. (*Id.*).

### III. Plaintiff's Appeal to the Board of Immigration Appeals

Plaintiff appealed the I-360 Petition denial to the Board of Immigration Appeals ("BIA"). (Dkt. 1 ¶ 30). Plaintiff argued that USCIS failed to consider all the evidence submitted in support of her petition, and that USCIS violated relevant law when it failed to disclose certain evidence to her that was adverse to her application. (*Id.*).

4

On or about June 16, 2021, the BIA dismissed Plaintiff's appeal on account of Plaintiff's failure to establish that her marriage to the decedent was bona fide. (*Id.* ¶ 31). The BIA considered Plaintiff's arguments on appeal as well as all evidence she submitted in support of her Form I-360 petition – and based on the entire record, concluded that Plaintiff failed to meet her burden of proof. (Dkt. 8-3 at 3). For example, the BIA noted that the interview testimony and documents provided did not demonstrate that Plaintiff and her husband resided together. (*Id.*). It further highlighted the following facts:

> [A] lease agreement, issued to [McDonald], prior to his death, indicated he was the only tenant and was issued only one key to the apartment. We recognize [Plaintiff's] signature appears on the last page of the lease, but her name is not listed anywhere on the document. . . .
>
> The remaining documents and photographs are insufficient evidence to establish a bona fide marital relationship, **particularly in light of the contradictory evidence and significant discrepancies outlined in the Director's decision**. . . . [T]he evidence does not establish the bona fides of the marriage by a preponderance of the evidence.

(*Id.* at 3–4). The BIA affirmed that Plaintiff failed to establish the bona fides of her marriage to McDonald by a preponderance of the evidence. (*Id.* at 4). Plaintiff's appeal of the Form I-360 denial was therefore dismissed on June 16, 2021. (*Id.* at 3). One month later, she filed the present action seeking judicial review of the BIA's determination pursuant to the Administrative Procedure Act ("APA"). (*See* Dkt. 1). Defendants now move to dismiss the Complaint for failure to state a claim. (Dkt. 7).

## **LEGAL STANDARD**

When considering a motion to dismiss under Rule 12(b)(6), the Court must "accept as true all factual allegations in the amended complaint and draw all permissible inferences in [the plaintiff]'s favor." *Bible v. United Student Aid Funds, Inc.*, 799 F.3d 633, 639 (7th Cir. 2015). To state a claim upon which relief may be granted, a complaint must contain a "short and plain

statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Detailed factual allegations are not required, but the plaintiff must allege facts that when "accepted as true . . . 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' " *Iqbal*, 556 U.S. at 678. In analyzing whether a complaint meets this standard, the "reviewing court [must] draw on its judicial experience and common sense." *Id.* at 679. When there are well-pleaded factual allegations, the Court assumes their veracity and then determines whether they plausibly give rise to an entitlement to relief. *Id.*

## **DISCUSSION**

Plaintiff asks this Court to review the BIA's decision under the APA, which "sets forth the procedures by which federal agencies are accountable to the public and their actions subject to review by the courts." *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891, 1905 (2020) (internal quotation marks omitted). The APA directs a "reviewing court" to "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *Fliger v. Nielsen*, 743 F. App'x 684, 687 (7th Cir. 2018). Courts deem an agency decision arbitrary and capricious if it "runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Dep't of Workforce Dev.-Div. of Vocational Rehab. v. U.S. Dep't of Educ.*, 980 F.3d 558, 565–66 (7th Cir. 2020) (quoting *Zero Zone, Inc. v. U.S. Dep't of Energy*, 832 F.3d 654, 668 (7th Cir. 2016)). Judicial review under this standard is deferential, and "a court may not substitute its own policy judgment for that of the agency." *Fed. Commc'ns Comm'n v. Prometheus Radio Project*, 141 S.

Ct. 1150, 1158 (2021). *See also F.C.C. v. Fox Television Stations, Inc.*, 556 U.S. 502, 513 (2009); *Sierra Club v. U.S. Env't Prot. Agency*, 774 F.3d 383, 393 (7th Cir. 2014); *Ghaly v. I.N.S.*, 48 F.3d 1426, 1431 (7th Cir. 1995). Courts "simply ensure[] that the agency has acted within a zone of reasonableness" and "has reasonably considered the relevant issues and reasonably explained the decision." *Prometheus Radio*, 141 S. Ct. at 1158. In reviewing an agency's decision under the arbitrary and capricious standard, the Court looks at the "entire record," and upholds the agency actions if it discerns a "rational basis for the agency's choice" even it disagrees with the agency's action. *Boucher v. U.S. Dep't of Agric.*, 934 F.3d 530, 547 (7th Cir. 2019) (quoting *Israel v. U.S. Dep't of Agric.*, 282 F.3d 521, 526 (7th Cir. 2002)).

To begin, the record demonstrates that the BIA considered the entire record before it in determining whether the marriage was bona fide, and provided sound reasoning in support of its ultimate conclusion. (Dkt. 8-3 at 3–4). Defendants explained that they "considered the petitioner's arguments on appeal and the evidence she initially submitted in support of the Form I-360 petition," which included documents and photographs she filed with USCIS as well as her visa interview. (*Id.*). Citing directly to this evidence, the BIA found that Plaintiff "failed to meet her burden of proof based on the entire record" – especially considering "the contradictory evidence and significant discrepancies outlined in the [USCIS] decision." (*Id.*). Among the examples of such discrepancies detailed in the USCIS decision was the fact that McDonald did not know whether Plaintiff's parents were alive, whether Plaintiff had grandchildren, or that Plaintiff was previously in a polygamous marriage. (Dkt. 8-2 at 3). The USCIS Notice of Decision further highlighted that Plaintiff failed to provide truthful information during her visa petition process. (*Id.* at 4–5 ("You were working in and residing [in] Illinois . . . throughout your entire marriage, and you concealed this information on all applications and petitions, and in all information given

7

during your interview.")). The BIA also gave a reasoned explanation as to why it discredited the lease agreement Plaintiff submitted in support of her petition. (Dkt. 8-3 at 3 ("We recognize [Plaintiff's] signature appears on the last page of the lease, but her name is not listed anywhere on the document.")). Far from being arbitrary or capricious, Defendants' reasoning is sensible and persuasive.

Plaintiff makes several arguments as to why the Defendants' decisions were unsupported. For one, Plaintiff claims that the Defendants ignored key evidence in support of her petition. (Dkt. 1 ¶¶ 33 (claiming Defendants ignored "the original death certificate which lists [Plaintiff] as the surviving spouse . . . and as the informant"), 35 (same regarding evidence that Plaintiff lived with her husband, including a copy of their lease and letters from friends and family), 36 (same regarding statements from her brother- and sister-in-law explaining that Plaintiff's nickname is "Queen" and that she lived with McDonald)). However, as explained above, the record shows that this evidence <u>was</u> considered – but simply failed to persuade Defendants to reach Plaintiff's desired outcome. (*E.g.*, Dkt. 8-3 at 3–4 ("We have considered [Plaintiff's] . . . evidence she initially submitted [to USCIS]. . . . [S]he has failed to meet the burden of proof based on the entire record. . . . [There is] insufficient evidence to establish a bona fide marital relationship, particularly in light of the contradictory evidence and significant discrepancies [in the record.]"); *see also* Dkt. 8-2 at 5 (citing evidence that Plaintiff did *not* reside with McDonald, as she claimed, but with her uncle)). While the BIA did not discuss all of the evidence before it in detail, it cannot be said that it "ignored" the evidence Plaintiff adduced in support of her petition. *Ghaly v. I.N.S.*, 48 F.3d 1426, 1433 (7th Cir. 1995) (crediting agency's claim that all relevant evidence was considered, even where the decision did not address all such evidence in detail; "[the agency] need not . . .

write an exegesis on every contention" (quoting *Vergara–Molina v. I.N.S.*, 956 F.2d 682, 685 (7th Cir. 1992))).

Next, Plaintiff argues that USCIS did not follow the proper procedures in denying her petition. In a case where a decision will be adverse to the applicant or petitioner, and "is based on derogatory information . . . of which the applicant or petitioner is unaware, h/she shall be advised of this fact and offered an opportunity to rebut the information and present information in his/her own behalf before the decision is rendered." 8 C.F.R. § 103.2(b)(16)(i). Here, Plaintiff highlights that the NOID "listed 9 questions and alleged answers between Plaintiff and her husband at their I-130 interview without any other information." (Dkt 1 ¶ 37). She characterizes this as an attempt "to summarize an entire conversation from an I-130 interview, which is inadequate, and does not allow Plaintiff to sufficiently rebut and present evidence of her own in response." (*Id.* (citing *Fliger*, 743 F. App'x 684)).

Plaintiff correctly points out that the Seventh Circuit has warned agencies against providing summaries, rather than complete copies, of "the record of proceeding which constitutes the basis for the decision." *Fliger*, 743 F. App'x at 689 (citing 8 C.F.R. § 103.2(b)(16)). However, the *Fliger* Court held in USCIS's favor even though it provided the plaintiff with "no primary-source documents to support its reasoning." *Id.* at 687. The Court explained that a summary of relevant documents or agency proceedings can sometimes suffice, particularly where "the reason [for the decision] was so straightforward that the document would not have been any more enlightening than the verbatim summary." *Id.* at 689–90. *See also Ghaly*, 48 F.3d at 1434 ("The regulations do not mandate that [petitioners] must be provided an opportunity to view each and every sworn statement.").

9

The summary provided by USCIS in this case was sufficient to allow Plaintiff to rebut the evidence at issue. USCIS provided a list of nine responses provided during the visa interview that raised doubts as to the bona fides of Plaintiff's marriage to McDonald. (Dkt. 8-1 at 3). The government honed in on particular questions that the couple failed to answer correctly – as opposed to, for example, providing broad categories of questions that raised doubts about the relationship. (*Id.*). As such, Plaintiff *was* given a reasonable opportunity to address the government's concerns, which she took advantage of and provided information to rebut the allegations but failed; the supplemental evidence she submitted in response to the NOID was insufficient. (Dkt. 8-2 at 4–5). Specifically, Plaintiff submitted an affidavit through which she narrowly attempted to clarify why she incorrectly identified the year McDonald's father passed away. (*Id.*). USCIS was not swayed by her explanation: "[Y]ou state that [M]cDonald's father passed away in 1993, not your father. This is correct, however you do not explain why you stated [McDonald's] father passed away 10–15 years ago when it was 26 years ago." (*Id.* at 4). She also provided evidence that she was known by the name "Queen" to rebut the allegation that she was not the next of kin of McDonald. She had the opportunity to provide USCIS with other evidence that might have explained the mistakes that occurred during the interview, but apparently failed to do so based on the record before the Court. Ultimately, while Plaintiff might not have a complete transcript of the visa interview, for example, she was still "advised of [derogatory facts] and offered an opportunity to rebut the information and present information [on her] own behalf before the decision [was] rendered." 8 C.F.R. § 103.2(b)(16)(i).

Plaintiff further challenges the portion of USCIS's decision that referred to evidence regarding her employment history obtained from the Illinois Department of Public Health. (Dkt. 1 ¶¶ 28, 37–38). Plaintiff asserts that because no such evidence was disclosed in the NOID, USCIS

could not rely on it when denying her petition. (*Id.* ¶¶ 37–38 (citing 8 C.F.R. § 103.2(b)(16)(i))). However, these records could not have been disclosed in the NOID – because the fact of Plaintiff's prior employment in the United States was revealed in Plaintiff's own *response* to the NOID. (*See* Dkt. 8-2 at 4–5). As USCIS's Notice of Decision to Deny Petition clearly explains, Plaintiff claimed to have "never worked or held a job since entering the United States" during her visa interview. (*Id.* at 4). Yet an affidavit *submitted by Plaintiff* in support of her response to the NOID indicated for the first time that she *was* in fact employed in the United States. (*Id.*). USCIS investigated these conflicting statements and found that Plaintiff "was working in and residing [in] Illinois . . . throughout [her] entire marriage to [McDonald]," but "concealed this information on all applications and petitions, and in all information given during [her] interview." (*Id.* at 5). It would be impossible for USCIS to have cited this info in the NOID because it was unearthed only after Plaintiff responded to the NOID. Ultimately, Plaintiff fails to demonstrate that she is likely to succeed on her claims against Defendants in this case. She fails to present any evidence that demonstrates that the Agency's decision and conclusions were arbitrary and capricious. Instead, the documents provided to the Court support the agency's conclusion that she was not in a bona file marriage to McDonald based on the numerous pieces of conflicting evidence and Petitioner's own misstatements to the Agency. The Complaint is therefore dismissed.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss [7] is granted.

_____
Virginia M. Kendall
United States District Judge

Date: January 19, 2022

11